J-S05040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.T., MOTHER | : | No. 1531 MDA 2019 |

Appeal from the Decree Entered August 26, 2019
in the Court of Common Pleas of Cumberland County
Orphans' Court at No(s):  127 ADOPTIONS 2018,
CP-21-DP-0000118-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.T., MOTHER | : | No. 1533 MDA 2019 |

Appeal from the Order Entered August 29, 2019
in the Court of Common Pleas of Cumberland County
Juvenile Division at No(s):  CP-21-DP-0000118-2017

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 01, 2020**

K.T. ("Mother") appeals from the Decree and Order granting the Petitions filed by Cumberland County Office of Children and Youth Services ("CYS"), involuntarily terminating Mother's parental rights to her minor male child, K.T. ("Child"), born in July 2016, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b), and changing Child's permanency

goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1] We affirm.

In its Opinion, the trial court set forth the factual background and procedural history of this appeal, which we adopt herein. **See** Trial Court Opinion, 11/14/19, at 1-5.

On October 2, 2018, CYS filed the Petition to change Child's permanency goal to adoption, and, on July 23, 2019, CYS filed the Petition to terminate the parental rights of Mother to Child.[2] The trial court held an evidentiary hearing on the Petitions on August 23, 2019, at which Mother, Mother's counsel, Father's counsel, Child's legal counsel, and the GAL were present. On August 26, 2019, and August 29, 2019, the trial court entered the termination Decree and goal change Order, respectively. On September 23, 2019, Mother timely filed Notices of Appeal, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated, *sua sponte*, on November 26, 2019.

In her brief, Mother raises five issues:

---

[1] On August 23, 2019, the trial court also entered a Decree voluntarily terminating the parental rights of Child's father, C.S. ("Father"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2504. Father was incarcerated at the time of the hearing and did not attend the hearing, although he was provided notice of the hearing. Father has not filed a brief in the instant appeal, nor has he filed any appeal from the termination and/or goal change Orders.

[2] The trial court appointed Attorney Marylou Matas to represent Child as guardian *ad litem* ("GAL") and Attorney Fawn Kehler as legal counsel for Child.

1. Did the [t]rial [c]ourt abuse its discretion and commit [an] error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of Mother's parental rights to [C]hild, thus contravening Section 2511(a) of the Adoption Act, [23] Pa.C.S.A § 2511(a)[?]

2. Did the [t]rial [c]ourt abuse its discretion and commit an error [of] law in terminating Mother's parental rights[,] when Mother had met or was meeting all her permanency plan goals and the conditions which led to [C]hild's removal or placement no longer existed or were substantially eliminated, thus contravening Section 2511(a) and (b) of the Adoption Act, [23] Pa.C.S.A. § 2511(a), (b).

3. Did the [t]rial [c]ourt abuse its discretion and commit an error of law in determining the best interests of [Child] would be served by changing the goal to adoption and terminating parental rights when Mother was ready, willing and able to parent [Child] and provide for his needs thus contravening Section 6351(f) of the Juvenile Act, [23] Pa.C.S.A. § 6351(f) and Section 2511(b) of the Adoption Act, [23] Pa.C.S.A. § 2511(b)[?]

4. Did the [t]rial [c]ourt abuse its discretion and commit an error of law when it found, despite a lack of clear and convincing evidence, that [C]hild's permanent placement goal of reunification with Mother was neither appropriate nor feasible, and ordered a goal change to adoption, thus contravening Section 6351(f) of the Juvenile Act, [23] Pa.C.S.A. § 6351(f)[?]

5. Did the [t]rial [c]ourt abuse its discretion and commit an error of law in changing the goal to adoption when the conditions which [led] to the removal or placement of [Child] no longer existed or were substantially eliminated, thus contravening Section 6351(f) of the Juvenile Act, [23] Pa.C.S.A. § 6351(f)[?]

Mother's Brief at 4-5 (issues reordered).

In Mother's first three issues,[3] she argues that the trial court erred and abused its discretion in granting CYS's Petitions for involuntary termination because CYS failed to prove that the requirements of 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b) were satisfied. *See* Mother's Brief at 11-21. Mother contends that the trial court failed to properly assess her performance towards her permanency plan goals, her willingness and ability to safely parent Child, and her elimination of the conditions that led to the removal and placement of Child. *Id.* at 15-21. Under Section 2511(b), Mother asserts that the trial court failed to properly assess the best interests of Child and the bond between her and Child, and the effect of severing that bond. *Id.*

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations, quotation marks and brackets omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-

---

[3] Mother's third claim raises Section 6351 of the Juvenile Act and Section 2511 of the Adoption Act. We will address Section 6351 of the Juvenile Act with our discussion of Mother's fourth and fifth claims.

74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by 23 Pa.C.S.A. § 2511, and requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a), along with consideration of Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In its Opinion, the trial court set forth the relevant law and cogently addressed Mother's first three claims. **See** Trial Court Opinion, 11/14/19, at 5-10. Our review of the record reflects that the trial court's decision to terminate the parental rights of Mother under Section 2511(a)(8) and (b) is supported by competent, clear and convincing evidence. **See In re T.S.M.**, **supra**. We therefore adopt the sound reasoning of the trial court for the purpose of this appeal, and affirm on this basis with regard to Mother's first three claims. **See** Trial Court Opinion, 11/14/19, at 5-10.

In Mother's fourth and fifth claims, she contends that the trial court erred and abused its discretion in changing Child's permanency goal to adoption, because the original reasons for Child's placement have either been eliminated or are being addressed. **See** Mother's Brief at 10-15. Mother states that, for more than six months leading up to the termination of parental rights/goal change hearing, she alleviated the conditions that led to the dependency adjudication and removal of Child from her care and custody by maintaining her own residence; working consistently at various jobs to pay her bills; eliminating domestic violence from her life; seeking out and receiving drug and alcohol and mental health treatment; participating in parenting services; maintaining regular and consistent contact and visitation with Child; and seeking out and obtaining a Pennsylvania medical marijuana card. **Id.** at 10. Mother asserts that the trial court commended her for her progress, and acknowledged that she loves Child, as the witnesses stated. **Id.** at 10-11.

Mother complains that the trial court, nevertheless, did not accept Mother's request to continue working toward reunification, and ordered the goal change. *Id.* at 11. Mother urges that the trial court's decision to change Child's goal to adoption was contrary to one of the primary purposes of the Juvenile Act, to preserve the unity of the family whenever possible. *Id.* at 11-13 (citing 42 Pa.C.S.A. § 6302).

> The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 111 A.3d 1164, 1174 (Pa. 2015) (citation and quotation marks omitted).

Regarding the disposition of a dependent child, Section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child. *See* 23 Pa.C.S.A. § 6351(e), (f), (f.1), (g).

When considering a petition for goal change for a dependent child, the trial court considers

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current

placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 6351(f)).

Additionally, Section 6351(f.1), in relevant part, requires the trial court to make a determination regarding the child's placement goal:

> **(f.1) Additional determination.—**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> * * *
>
> (2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(2).

On the issue of a placement goal change, this Court has stated that,

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, … 574 A.2d 690, 691 ([Pa. Super.] 1990) (noting that "[o]nce a child is adjudicated dependent … the issues of custody and continuation of foster care are determined by the child's best interests."). Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.[A.] § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, … 461 A.2d 1263, 1267 ([Pa. Super.] 1983) (citation omitted).

- 8 -

***In re K.C.***, 903 A.2d 12, 14-15 (Pa. Super. 2006).

While the trial court did not provide a separate explanation for changing the goal to adoption, we find no abuse of discretion or error of law on the part of the trial court in changing Child's permanency goal. For the reasons expressed in the trial court's Opinion with regard to Section 2511(a)(8) and (b), the trial court appropriately weighed and considered the matters set forth in ***A.K.***, ***supra***. ***See*** Trial Court Opinion, 11/14/19, at 7-10. Accordingly, we conclude that the trial court did not abuse its discretion in changing Child's permanency goal to adoption. ***See In re K.C.***, ***supra***.

Decree and Order affirmed.

Judge Shogan joins the memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/01/2020

RE: IN THE ADOPTION OF K.T., a : IN THE COURT OF COMMON PLEAS
Minor         : OF CUMBERLAND COUNTY,
            : PENNSYLVANIA
            :
            : Orphans' Court
            :
Born: 2016        : NO: 127 ADOPTIONS 2018

## IN RE: OPINION PURSUANT TO Pa. R.A.P. 1925

Guido, P.J., November *14*, 2019

Mother has appealed our order of August 23, 2019, which terminated her parental rights to K.T. On appeal, she alleges that we erred (1) when we found by clear and convincing evidence that sufficient grounds existed for termination of her parental rights because the conditions which led to placement of the child no longer existed, or were substantially eliminated, and (2) in determining that termination of her parental rights would best serve the child's interests.[1] We will discuss the reasons for our decision in the opinion that follows.

### FACTUAL BACKGROUND

The Agency had been involved with Mother and Child since the summer of 2017. There were concerns regarding Mother's extensive marijuana use, her need to manage her mental health needs, her ability to care for the child, and violence in the home shared with K.T.'s maternal grandmother.[2] The Child was adjudicated

---

[1] *See* Statement of Errors Complained of on Appeal.

[2] Recommendation for Adjudication and Disposition—Child Dependent, October 23, 2018, CYS Exhibit 1.

dependent because of those concerns on October 23, 2017. Mother's goals

included the need to obtain independent housing, attend parenting classes, address

her mental health needs, and obtain treatment for her drug issues.[3] The Child was

allowed to remain in the home pending Mother's cooperation in addressing her

goals.[4]

On January 18, 2018, the Child was removed from Mother's care. The

reasons for her removal included Mother's continued and extensive marijuana use,

failure to attend recommended drug treatment, continued domestic violence in the

home, failure to cooperate with the Agency, and failure to cooperate with parent

training.[5] She had begun receiving mental health services, but only shortly before

the child was removed.

Over the next year, Mother's progress on her goals was almost non-existent.

She continued to use marijuana at high levels. While she began drug counseling,

she appeared at those sessions smelling of marijuana.[6] She had been recommended

for inpatient treatment, which she began. However, she was unsuccessfully

discharged in May of 2018.[7] As of the Judicial Conference on November 1, 2018,

she still had not resumed drug treatment.[8] While she started group sessions shortly

---

[3] *Id.*
[4] *Id.*
[5] *See* Recommendation Regarding Modification of Child's Placement, January 18, 2018, CYS Exhibit 1.
[6] *See* Permanency Review Recommendation, March 18, 2018, CYS Exhibit 1.
[7] *See* Permanency Review Recommendation, August 20, 2018, CYS Exhibit 1.
[8] *See* Judicial Conference, November 1, 2018, CYS Exhibit 1.

thereafter, she was discharged for showing up "perceptibly under the influence" of marijuana.[9] Finally, her participation in the parenting program was both sporadic and limited as a result of her continued drug use.

Mother's progress on receiving mental health treatment was not much better. While she had begun therapy shortly prior to the Child's placement, she did not appear to be vested in it.[10] She stopped her mental health counseling about the time she was unsuccessfully discharged from her inpatient drug treatment in May of 2018.[11] She did not resume until December 2018.[12]

Finally, Mother did not make any progress toward obtaining independent housing during the year of 2018.[13] Despite numerous attempts by the Agency to get her involved with HUD, Mother always failed to follow through.[14]

Mother's progress on her goals over the first eight (8) months of 2019 was better, but still not good enough. She did become involved in both mental health and drug counseling on an outpatient basis. However, she had periods of time when her attendance was inconsistent.[15]

---

[9] *See* Permanency Review Recommendation, March 18, 2018, CYS Exhibit 1, page 3.
[10] *See* Permanency Review Recommendation, March 18, 2018, CYS Exhibit 1.
[11] Judicial Conference, June 4, 2018.
[12] Transcript of Proceedings, Termination of Parental Rights, August 23, 2019, at 6:9-10.
[13] *See* Permanency Review Recommendation, January 17, 2019, CYS Exhibit 1.
[14] *See* Permanency Review Recommendations, March 18, 2018 and August 20, 2018, CYS Exhibit 1.
[15] Tr. at 14:6-10.

While Mother obtained independent housing in March of 2019, we were unable to find that it is stable.[16] She initially refused to give the name of the landlord or to provide a copy of the lease.[17] Once those were provided to the Agency, she refused to sign a release to allow the Agency to contact the landlord.[18] More importantly, she has refused to verify her sources of income to confirm that she will be able to maintain the home.[19] By her own admission, she has jumped from job to job since the Child was placed. In the twenty (20) months between his placement and the termination hearing, Mother had not held any job longer than two (2) months.[20]

Despite being told on numerous occasions that her sobriety was a precondition to reunification, Mother continued to use marijuana non-stop throughout the Child's placement. As the master noted at the beginning of this year, Mother's continued use of marijuana "directly impacts her daily functioning, resulting in her inability to meet her own daily needs in the form of safe housing, stable employment, and abstention from criminal activity".[21] Other than the acquisition of an apartment, nothing had changed since those comments were made. Mother continued to abuse marijuana. She continued to move from job to

---

[16] *See* Permanency Review, May 15, 2019.
[17] *Id.*
[18] Tr. at 37:2-3.
[19] Tr. at 23:7-24.
[20] Tr. at 47:1-4.
[21] *See* Permanency Review Recommendation, January 17, 2019, page 3, CYS Exhibit 1.

job; and she continued to run afoul of the law.[22] She was arrested and charged with receiving stolen property on August 15, 2019.[23] On July 28, 2019, she was stopped by the Pennsylvania State Police on suspicion of driving under the influence of marijuana. She admitted to smoking. She failed the field sobriety tests. Charges will be filed once blood results are received.[24]

The Child is thriving in the home with his foster parents. He has been in that home since March 8, 2018.[25] His foster parents love him and want to adopt him.[26] The Child is very bonded with them. He refers to them as "Mom" and "Dad".[27] There would be no detrimental effect to him as a result of the termination of Mother's parental rights.[28] To the contrary, it would lessen his confusion over his relationship with the foster parents.

## DISCUSSION

It is well established that a party seeking termination of parental rights bears the burden of demonstrating by "clear and convincing evidence" that the grounds exist. *Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994). "The standard of clear and convincing evidence means testimony is so clear, direct, weighty, and

---

[22] Tr. at 35:5-7.

[23] *Id.*

[24] We note that Mother obtained a medical marijuana card in early July of 2019. However, she refused to sign a release so that the caseworker could discuss the matter with the prescribing physician Tr. at 35:24-36:22.

[25] Tr. at 32:25-33:3.

[26] Tr. at 50:10-53:11.

[27] Tr. at 47:17-22.

[28] Tr. at 47:13-22.

convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-04 (Pa. 1989).

The Agency filed the Petition on October 5, 2018. It sought involuntary termination of Mother's parental rights under several provisions of Section 2511(a) of the Adoption Act. The particular provisions relied upon by the Agency provide as follows:

a) General rule- The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

...

8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

...

23 Pa.C.S. §§ 2511(a)(1),(2), and (8). While the Agency asserted several grounds for termination, it only needed to demonstrate that grounds existed on any one of the above subsections for the Petition to be granted. *See In re: L.S.G.*, 767 A.2d 587 (Pa. Super. 2001).

We were satisfied that the Agency met its burden under all three subsections given the facts and history in this case. However, we will focus on subsection (a)(8) for the purpose of brevity. In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following three elements must be met: 1) the child has been removed from the care of the parent for at least twelve (12) months, 2) the conditions which led to the removal or placement of the child continue to exist, and 3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006). Notably, termination under Section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to placement. *Id.*

In the instant case, K.T. had been in placement continuously for twenty (20) months at the time the hearing on the Petition for Involuntary Termination. During those many months, we were never in a position to feel that it would be safe to return him to Mother. While Mother had obtained independent housing in March of 2019, we were not satisfied that it was stable. As we stated at the conclusion of the hearing:

> **THE COURT:** ....I've got some serious concerns about her ability to maintain that home. I would hate to return [K.T.] and have to place him yet again and disrupt the steady home that he has had to this point in time.[29]

Our concerns were exacerbated by Mother's inability to maintain stable employment as well as her refusal to cooperate in identifying the resources she was using to maintain her home and other living expenses.

While Mother had made significant strides in her ability to parent the Child, she had not been able to complete the parenting program because of her continued abuse of marijuana. We understand that medical marijuana is legal in Pennsylvania. We are also aware that Mother obtained a medical marijuana card. However, that is all we know. Her refusal to cooperate with the Agency so that it could contact the prescribing physician left us without any other information. Why was it prescribed? What are the interactions with her psychiatric medications? How much should she use? How often should she use it? Is she using medical marijuana or street drugs? What we did know, is that she continued to use smoke marijuana, which is prohibited under the medical marijuana statute.[30] More importantly, she continued to use (and abuse) marijuana throughout the Child's placement. While she testified that she would not abuse marijuana when the Child was in her care,

---

[29] Tr. at 78:9-12.
[30] 35 P.S. § 10231.304(b)(1).

we did not find her testimony to be credible. The master aptly observed on May 13, 2019,

> even if she is able to function as a parent for discrete periods of time, her failure to stop using when it has so directly impacted her ability to reunify with her child for 16 months is powerful evidence of how her substance abuse dominates her life and interferes with her long term ability to meet the needs of a small child.[31]

The same observation held true almost four (4) months later at the time of our hearing.[32]

Next, we engaged in an analysis under the third element of § 2511(a)(8), as well as § 2511(b), to determine whether termination of Mother's parental rights would be in K.T.'s best interest.[33] We considered the nature and status of the emotional bond between Mother and K.T. as part of this analysis. We also paid close attention to the likely effect that permanently severing any such bond would have on K.T.

While we could not deny that K.T. is strongly bonded with Mother, we were also satisfied that the bond was not nearly as strong as the one with his foster parents. He is happy to see Mother, but he is also very happy to return home to his foster parents. We were convinced that his strong bond

---

[31] *See* Permanency Review, May 15, 2019, page 4.

[32] It is also powerful evidence of grounds for termination under § 2511(a)(1) and (2).

[33] We find that § 2511(b) and the third element of § 2511(a)(8) are intertwined and reflect the same required analysis. Naturally, the child's needs and welfare, as addressed in § 2511(a)(8), encompass the developmental, physical and emotional needs and welfare articulated under § 2511(b).

with his foster parents would make it unlikely that there would be any detrimental effect to him as a result of terminating Mother's parental rights. To the contrary, terminating her parental rights to allow K.T. to be adopted by his foster parents is clearly in his best interest. He has lived with them for almost half his life. He views them as his mom and dad. He loves them and they love him. He will be able to achieve permanency in the safe and loving home in which he has thrived since March of 2018.

For the above reasons, we found that the Agency had established by clear and convincing evidence grounds for the termination of parental rights under Section 2511of the Adoption Act, and that such termination served the best interest of the Child. Therefore, we terminated Mother's parental rights.

By the Court,

Edward E. Guido, P.J.

Distribution:
Lindsay Dare Baird, Esquire, *Solicitor for CCC&YS*
Marylou Matas, Esquire *Guardian Ad Litem for Juvenile*
Damian DeStefano, *Attorney for Juvenile*
Joseph Hitchings, Esquire, *Attorney for Mother*